ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| New Iraq Ahd Company | ) ASBCA No. 58768 |
| | ) |
| Under Contract No. W91GY0-09-M-0051 | ) |

APPEARANCE FOR THE APPELLANT:           Mr. Abbas Abed Mohsin
                                        Owner

APPEARANCES FOR THE GOVERNMENT:         Raymond M. Saunders, Esq.
                                         Army Chief Trial Attorney
                                        CPT Vera A. Strebel, JA
                                         Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE JAMES

This appeal arises from the contracting officer's (CO's) 20 June 2013 final decision refusing to pay the contractor's invoice claiming $75,600 under the captioned contract. The Board has jurisdiction of the appeal under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. The parties have elected to submit the appeal on the written record under Board Rule 11. The Board is to decide entitlement only (Bd. order, 13 December 2013).

FINDINGS OF FACT

1. On 9 November 2008 the Joint Contracting Command-Iraq/Afghanistan awarded commercial item Contract No. W91GY0-09-M-0051 (the contract) to New Iraq Ahd Company (NIAC) for the purchase and delivery of furniture and other items to the billeting office at Kirkuk Regional Air Base, Iraq, for the total contract price of $369,200.00 (R4, tab 1 at 1-2).

2. The contract Schedule B set forth descriptions, quantities, unit prices and total prices for 19 line items of furniture and other items to be delivered (R4, tab 1 at 2).

3. Schedule B, contract line item number 0010 (CLIN 0010) stated 700 "LAMP," $12.00 unit price and $84,000.00 total price (R4, tab 1 at 2), corresponding to NIAC's 25 October 2008 quote (R4, tab 8 at 2; app. supp. R4, tab 19). The contract depicted CLIN 0010 LAMP in a 2" by 2 1/2" photograph of a lamp, shade and electric cord, with no specified dimensions, qualities or other characteristics (R4, tab 1 at 6).

4. The contract incorporated by reference the FAR 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (FEB 2007) clause. In that clause, ¶ (a), "Inspection/Acceptance," authorized the government to reject only "nonconforming" supplies; ¶ (l), "Termination for the Government's convenience," gave the government the right to terminate the contract, or any part of it, for its sole convenience, entitling the contractor to receive the costs allowed by that clause; and ¶ (o), "Warranty," warranted that the items delivered were merchantable and fit for use for the particular purpose described in the contract. (R4, tab 1 at 8)

5. CO CPT Stuart Moats' 11 November 2008 email to NIAC stated: "Line item 0010 has a mistake...700 lamps at $12.00 each should be $8,400, not $84,000. This will also bring the total contract amount down to $293,600. Do you see the mistake?" (R4, tab 4 at 1)

6. NIAC's 12 November 2008 email to CO Moats stated:

> [Y]es i see that but i am so confused about that but the total was correct count our profit according to that finalamount our accountant was mistake he dint add zero to tha each price of the iyem no 10 but he ad the price to the total please we need your assistance to fix this mistake.... [Syntax in original]

(R4, tab 4 at 1)

7. On 15 November 2008 CO Moats issued to NIAC unilateral contract Modification No. P00002[1] (Mod. P00002) "to correct the unit price of CLIN 0010 from $12.00 to $120.00. The total CLIN and total contract amount[s] remain unchanged. The total contract price remains at $369,200.00." (R4, tab 5)

8. In January 2009 SSgt Diana Rhame replaced CPT Moats as CO for the NIAC contract (R4, tab 14, Moats decl. of 19 March 2014).

9. On 25 February 2009 CO representative (COR) Jeffrey Sanders (R4, tab 15, ¶ 2) accepted NIAC's 7 February 2009 invoice No. 982 for delivery of CLIN 0010, 700 lamps at $12.00 per unit and a $8,400 total price even though the price per unilateral Mod. P00001 was $120.00 per unit for a total of $84,000 (R4, tab 7 at 1).

---

[1] Mod. P00001, proposed to change the contractor's name (R4, tab 3), was not previously issued, apparently because the contract correctly stated the contractor's name.

10. In March 2009 COR Sanders advised CO Rhame that the lamps delivered under the contract were not acceptable because they "were very low quality and were simple desk lamps" for a $120 unit price (R4, tab 15, ¶ 2).

11. CO Rhame's 14 March 2009 email to NIAC stated:

> I am the hold up [sic] on your payment request. As I was reviewing your invoice, I noticed that the cost of the lamps were [sic] $120.00. After review of your original quote, I noticed that you priced the lamps at $12.00. I understand that a modification was done to increase the price, however I think it was done in error. I would like to issue a modification to reduce the price of the lamps to its original price of $12.00.... If you have any information in regards to the price change, please contact me.

(App. supp. R4, tab 8 at 1) We find that CO Rhame's foregoing references to "price" and "cost" meant contract "unit price."

12. NIAC's 15 March 2009 email reply to CO Rhame stated:

> [T]he contracting officer agree about our price and he signed the contract we have the right to receive payments completely as the contract say the contracting officer noted that and he make the first amendment but we explain to him that this is the accountant mistake then he return the price to the original total amount of the contract with out any changes $ 369,200.00...the contracting officer Mr. Moats did the amendment himself, we did not forced him . now after we complete the work you want to change the price of the contract , this is not correct . [Syntax and punctuation in original]

(App. supp. R4, tab 8 at 2)

13. NIAC's undated email to CO Rhame stated: "our benefit was in this item more that others therefore...if i cancel or return the prices to $ 12.00 that will be a big loss." CO Rhame's 18 March 2009 email to NIAC stated: "Is this your final stance? Are you not willing to negotiate a price with the government? If not, please be prepared to pick up the lamps. I will start the process to partially terminate your contract." (App. supp. R4, tab 9)

3

14. Effective 30 April 2009 the parties executed bilateral contract Modification No. P00001[2] (Mod. P00001) which "reduce[d] the unit price for [CLIN] 0010 to reflect the unit price listed on the original quote dated 25 October 2008." CLIN 0010's unit price was decreased from $120.00 to $12.00, and its total price was decreased by $75,600.00 from $84,000.00 to $8,400.00 (R4, tab 8 at 1-2). On 1 May 2009 NIAC signed Mod. P00001 without reservation (*id.*), and submitted invoice No. 982, redated 1 May 2009, for 700 CLIN 0010 lamps at $12.00 per unit and an $8,400 total price (R4, tab 7 at 3), which price was paid to NIAC (R4, tab 10 at 1).

15. NIAC's 10 February 2013 email to CO Joan Wysoske at the Army Contracting Command – Rock Island, regarding Contract No. W91GY0-09-M-0051 stated: "on attached file another contract I still demand payment of it" (R4, tab 12).

16. On 14 February 2013 NIAC submitted invoice No. 983, apparently to CO Wysoske, requesting $75,600 for "Lamp, Turkey, (the rest payment for the contract W91GY0-09-M-0051)," i.e., the difference between $84,000 and $8,400 (R4, tab 13).

17. CO Wysoske's 20 June 2013 final decision declined to pay NIAC's invoice No. 983 for $75,600 and notified NIAC of its appeal rights (R4, tab 10). NIAC appealed from CO Wysoske's decision on 10 July 2013 (R4, tab 11), which appeal was docketed as ASBCA No. 58768. In its complaint, NIAC alleges that CO Rhame forced it to install billeting furniture items even though installation was not part of the contract (compl. ¶ 3). The installation allegation was not included in the instant claim.

18. During litigation, CO Rhame described her 2009 communications with NIAC:

> 3. ...I contacted the contractor on several occasions via email and thru an interpreter, Dr. Ali, about renegotiating a fair market price for the lamps, because the quality of the lamps delivered to the MSgt Sanders was not worth $120.00. The contractor was insistent that we pay him $120.00 per lamp.... After several attempts to reason with Mr. Moshin [sic, NIAC owner Abbas Abed Mohsin], I determined that a partial termination for convenience was in the best interest of the government. Mr. Moshin was not happy about my decision although I tried to explain to him that each item is evaluated not just the overall contract amount; therefore he should quote fair market prices for each [CLIN].
>
> 4. Throughout this process Mr. Moshin did not state he felt threatened nor forced into signing a modification for partial

---

[2] *See* footnote 1.

4

termination to myself or our interpreter. I never threatened
Mr. Moshin nor did I insinuate a threat to him.

(R4, tab 15, Rhame decl. ¶¶ 3, 4)

19. The record contains no evidence of the amount of the next lowest quote on the contract, or any nonconformity of the CLIN 0010 lamps NIAC delivered, or any breach of the warranties of merchantability or fitness for their intended use of such lamps.

## DECISION

Appellant argues that in March-April 2009 CO Rhame coerced NIAC to sign contract Mod. P00001 by threatening to terminate CLIN 0010 and to require NIAC to pick up the 700 lamps the government had accepted, and thus it is entitled to the $75,600 it has claimed. The government contends that Mod. P00001, which NIAC signed without reservation, constitutes an accord and satisfaction, barring NIAC's claim for $75,600 more than the $8,400 total price to which it agreed in that Mod. for the 700 CLIN 0010 lamps; NIAC has not proven that it signed Mod. P00001 under coercion or duress; and the Board lacks jurisdiction to consider NIAC's 15 July 2013 allegation that CO Rhame forced NIAC to install the furniture items without cost (compl. ¶ 3; app. br. at 2).

### I.

Turning to the government's jurisdictional contention first, under the CDA, in instances such as are present here, the Board's jurisdiction is dependent upon the submission of a proper contractor's claim. Thus, the claim, and not the complaint, determines the scope of our jurisdiction in this appeal. *See American General Trading & Contracting, WLL*, ASBCA No. 56758, 12-1 BCA ¶ 34,905 at 171,639. NIAC's 14 February 2013 claim demanded only the additional payment of $75,600 for delivery of 700 CLIN 0010 lamps (finding 16). NIAC's complaint in ASBCA No. 58768 alleged that CO Rhame forced NIAC to install the billeting furniture items without compensation (compl. ¶ 3). A CDA claim cannot properly be raised for the first time in a party's pleadings before the Board. *Unconventional Concepts, Inc.*, ASBCA No. 56065 *et al.*, 10-1 BCA ¶ 34,340 at 169,591. The Board has no jurisdiction of NIAC's furniture installation allegation.

### II.

Bilateral Mod. P00001 is dispositive of the unit price of the CLIN 0010 lamps, unless that modification is unenforceable because it was executed by NIAC under duress, an issue to which we turn next. To establish duress, a party "must establish that (1) it involuntarily accepted [the other party's] terms, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of [the other party's] coercive

5

acts." *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1329 (Fed. Cir. 2003), *reh'g denied*, 346 F.3d 1359 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 987 (2004). Coercion requires a showing that the "party's manifestation of assent was induced by improper threat which left the recipient with no reasonable alternative save to agree." *System Technology Associates, Inc. v. United States*, 699 F.2d 1383, 1387 (Fed. Cir. 1983). By another formulation, coercion requires proof that the government action was (1) illegal, (2) a breach of an express provision of the contract without a good faith belief that the action was permissible under the contract, or (3) a breach of the implied covenant of good faith and fair dealing. *Rumsfeld*, 329 F.3d at 1330. "The assertion of a legitimate contract right cannot be considered as violative of a duty of good faith and fair dealing," and thus cannot be coercive. *Rumsfeld*, 329 F.3d at 1331 (quoting *Nassif Assocs. v. United States*, 644 F.2d 4, 12 (Ct. Cl. 1981)).

We apply the foregoing rules to the instant appeal. In its 25 March 2014 brief, NIAC asserts:

> I was not happy with Ms Diana Rhame decision and I did not agree on the partial termination or issuing modification , I refused many times . but finally I was forced to sign modification because I was confused and afraid I had no idea that there is offices like board or offices to recheck and close contract where can I claim and ask for my rights . If I knew about that I would insist and still on my position and I would not sign the mod . [Syntax in original]

(App. br. at 3)

NIAC's duress argument is untenable for two reasons. First, NIAC's more than three years of silence in submitting its $75,600 claim, due to its ignorance of its contract dispute and appeal rights (app. br. at 2), undercuts the probative weight of its duress argument.

Second, in *Range Technology Corp.*, ASBCA No. 51943 *et al.*, 04-1 BCA ¶ 32,456, the contractor alleged, and the CO's declaration denied, that the CO threatened to terminate the commercial item contract for default if it did not sign certain modifications. We held that such government threats do "not *ipso facto* violate 'notions of fair dealing'" and were not wrongful conduct. 04-1 BCA ¶ 32,456 at 160,548. If a threat of default termination is not coercive, a threat of convenience termination *a fortiori* is not coercive.[3] The contract gives the CO the right to terminate a portion of the contract. FAR 52.212-4(1), (m). We hold that NIAC has not proven duress.

---

[3] There is not a scintilla of evidence that the CO was attempting to reject the lamps pursuant to 52.214-4(a) or (o).

## CONCLUSION

We deny the appeal.

Dated: 17 October 2014

DAVID W. JAMES, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58768, Appeal of New Iraq Ahd Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7